IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

VICTORIA SMITLEY,

       Plaintiff,

v.

NISSAN NORTH AMERICA, INC.,

       Defendant.

Case No. 2:09-cv-148
Judge Sargus
Magistrate Judge Kemp

## OPINION AND ORDER

This matter is before the Court on Defendant Nissan North America Incorporated ("Nissan")'s Motion for Summary Judgment. (Doc. 24.) For the reasons set forth below, Nissan's motion is **GRANTED**.

### I.

On May 11, 2005, Plaintiff Victoria Smitley ("Smitley") was operating a 2002 Nissan Xterra ("Xterra") at the drive-thru of a Dairy Queen restaurant in Lancaster, Ohio. (*See* Smitley Dep. 16-17.) In the car with her was her granddaughter, Breanna, who was four years old. (Smitley Dep. 19.) The Xterra belonged to Breanna's mother, Jessica Stephens, who later became Smitley's daughter-in-law. (Smitley Dep. 20-21.)

Accordingly to Smitley, after placing her order, she attempted to move the Xterra forward as the vehicle in front of her also moved forward. (Smitley Dep. 30.) As she touched the accelerator, the Xterra "took off" out of control. (Smitley Dep. 30.) Smitley swerved to avoid hitting the vehicle in front of her, but clipped its tail end. (Smitley Dep. 30-31.) Smitley

attempted to stop the out-of-control vehicle, but the brakes were not functioning. (Smitley Dep. 31.) She steered the Xterra through an alley and ended up crashing into a telephone pole. (Smitley Dep. 31-32.) The Xterra stopped after impacting the telephone pole, while the engine kept running at a high idle. (Smitley Dep. 32.)

Smitley initially filed suit against Nissan in the Fairfield County Court of Common Pleas. (Compl. ¶ 5.) Nissan then removed the case to this Court, and the case was subsequently dismissed without prejudice because of Smitley's failure to prosecute the action. (Compl. ¶¶ 6-7.) Smitley then re-filed the case alleging causes of action against Nissan under Ohio law for defective design and manufacture of the Xterra, for failure to warn, and for failure of the Xterra to conform to Nissan's representations. (Compl. ¶¶ 16-19.) Nissan now moves for summary judgment.

## II.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will

2

not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)(stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

## III.

As an initial matter, Smitley has conceded summary judgement on her claims for design defect, failure to warn, and failure to conform to representations. (*See* Pls.'s Mem. Contra Def.'s Mot. Summ. J. 1-2.) Accordingly, summary judgment is granted to Nissan on those claims.

3

## IV.

Smitley's remaining claim is that Nissan defectively manufactured the Xterra. Under Ohio law, to succeed on a claim of defective manufacturing, a plaintiff must establish (1) the "product in question was defective in manufacture or construction"; (2) the defective aspect of the product was a proximate cause of the plaintiff's injury; and (3) the defendant manufactured the actual product in question. OHIO REV. CODE § 2307.73 (2010). A product "is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards." *Id.* § 2307.74 (2010).

In addition to Smitley's deposition, the record before the Court includes a report by Mark Sargent ("Sargent"), a forensic mechanic, and the deposition of Sargent. In his report, Sargent concluded that "it is my professional opinion that the idle in this vehicle was substantially elevated, approximately twice its normal idle rate. This was a result of the throttle linkages not being properly aligned and literally being bent, although not through impact related damage or technician interaction." (Def.'s Mot. Summ. J. Ex. B. 22.) Sargent further concluded that the elevated idle could cause conditions where the brakes could overheat, resulting in "brake fade" as described by Smitley, and an inability to control the vehicle. (Def.'s Mot. Summ. J. Ex. B. 22.) The report notes that the Xterra had been driven over 65,000 miles. (Def.'s Mot. Summ. J. Ex. B. 2.)

At his deposition, Sargent indicated that he believed the throttle lever and the throttle stop for the idle air control valve were defective components in the Xterra. (Sargent Dep. 10.) When

4

asked how he would characterize the defect, Sargent stated:

> I can't characterize it as a design defect because the design has been tried and true for many, many years. The distortion of the throttle plate or the throttle lever in the previously described components, that may have been that way from the factory. I can't say that to any reasonable degree of certainty, but it's more likely than not, seeing as . . . Mrs. Stephens indicated that she has never had any work done on the vehicle in the engine compartment or anything of that nature and I've seen no repair orders to indicate that there has been any work done that some sort of interaction may have taken place after the fact.

(Sargent Dep. 12-13.) Sargent also stated that there was no way to know for sure exactly when the defect developed. (Sargent Dep. 13.) Sargent indicated that the throttle body design of the Xterra was common in Nissan vehicles. (Sargent Dep. 13.) Finally, Sargent denied reviewing Nissan design or manufacturing specifications in completing his report and therefore had no opinion as to whether the Xterra actually met Nissan's manufacturing design specifications, formula, or performance standards. (Sargent Dep. 50.)

Nissan contends that Sargent's report and testimony are not enough to create a genuine issue of material fact for a jury to decide. Specifically, Nissan asserts that Smitley's evidence fails to establish that the throttle body materially deviated from Nissan's design specifications, that the alleged defect existed at the time the Xterra left Nissan's control, or that the defect was the proximate cause of Smitley's injuries. Because the Court agrees with Nissan that Smitley has failed to demonstrate that the Xterra deviated in a material way from Nissan's design specifications, formula, or performance standards or from identical units manufactured to the same design standards, or that a defect existed at the time the Xterra left Nissan's hands, Nissan

5

is entitled to summary judgment.[1]

In manufacturing defect cases, the plaintiff has the burden of proving the existence of the defect. *See Bonacker v. H.J. Heinz Co.*, 676 N.E.2d 940, 942 (Ohio Ct. App. 1996). Sargent's report and deposition described the bent throttle linkages, which he concluded resulted in an elevated idle rate for the engine. He also explained that such an elevated idle rate could have led to the malfunction described by Smitley in her deposition. However, in neither his report nor deposition did Sargent specify how the problems he identified with the throttle body differed from Nissan's design specifications. In fact, when questioned, he admitted that he had not reviewed Nissan's design specifications, and thus could not form an opinion as to whether the Xterra complied with those specifications. Sargent did not testify or explain in his report that he had compared the Xterra to other, identical models. Furthermore, Sargent did not testify that Nissan had defectively designed the Xterra, a claim originally made, but now abandoned by Smitley.

Ohio law allows a plaintiff to establish that a product is defective with circumstantial evidence. OHIO REV. CODE § 2307.73(B) (2010). However, such circumstantial evidence must "permit a jury to go beyond speculation and render a judgment in accordance with law." *State Farm Fire & Cas. Co. v. Chrysler Corp.*, 523 N.E.2d 489, 496 (Ohio 1988)(abrogated on other grounds by statute). Here, without evidence of what the design specifications were, the jury would be reduced to speculation in determining if Nissan had not conformed to the

---

[1]The Court also notes that Sargent's testimony and report does not comply with the Ohio rule that expert opinions used to establish proximate cause must be expressed in terms of probabilities. *See Stinson v. England*, 633 N.E.2d 532, 534 (Ohio 1994)(syllabus of the Court). Because the issue before the Court is whether Sargent reviewed Nissan's design specifications, formulas, or performance standards, the rule in *Stinson* is only tangentially relevant in this case.

6

specifications. *See, e.g., White v. DePuy, Inc.*, 718 N.E.2d 450, 456 (Ohio Ct. App. 1998)("[T]here is no evidence concerning 'design specifications, formula, or performance standards of the manufacturer' or of any failure by DePuy to meet them. Therefore, we find that summary judgment was properly granted on this claim.").

Additionally, Smitley has not provided evidence from which a reasonable jury could conclude that the Xterra was defective upon leaving the control of Nissan. At one point in his testimony, Sargent indicated that it was more likely than not that the defect existed at the factory, but vacillated by stating that he could not reach that conclusion with "any reasonable degree of certainty." (*See* Sargent Dep. 12-13.) Later, Sargent expressly stated that he could not "determine if [the throttle body defect occurred] at the point of manufacture or if it happened later in time." (Sargent Dep. 49.) Sargent's second statement is unambiguous and unequivocal—he had no facts from which to conclude that the defect had existed when it left Nissan's assembly line. Here, again, the jury would be reduced to speculation in determining if the alleged defect existed upon manufacture or developed during the more than 65,000 miles traveled by the Xterra after it left the factory. In the Court's view, the fact that the Xterra had such extensive mileage at the time of Smitley's accident makes this case analogous to *State Farm*, where the Supreme Court of Ohio ruled that the evidence would not support a finding by a jury that an automobile was defective at the time it left the manufacturer's control where some intervening occurrences—in that case repairs made by the dealership—made it "equally likely" that the defect occurred after manufacture. *See State Farm*, 523 N.E.2d at 496-97.

V.

For the reasons set forth above, Nissan's Motion for Summary Judgment (Doc. 24) is

7

**GRANTED.** The clerk is directed to enter judgment for Nissan and close this matter.

**IT IS SO ORDERED.**

___8-2-2010___  
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**